127 N.J. Super. 421 (1974)
317 A.2d 738
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
GERALD TILLEM, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 20, 1974.
Decided March 29, 1974.
*423 Before Judges HALPERN, MATTHEWS and BISCHOFF.
Mr. Robert A. Coogan argued the cause for appellant (Messrs. Saling, Moore, O'Mara & Coogan, attorneys).
Mr. Michael A. Graham, Deputy Attorney General, argued the cause for respondent (Mr. William F. Hyland, Jr., Attorney General of New Jersey, attorney; Mr. George F. Kugler, Jr., former Attorney General of New Jersey, and Michael A. Graham, of counsel and on the brief).
*424 The opinion of the court was delivered by HALPERN, P.J.A.D.
Following a jury trial defendant was convicted of engaging in the business of "loan sharking," in violation of N.J.S.A. 2A:119A-3. He was also convicted, at the same trial, on seven counts of "loan sharking" representing seven illegal loans made to four different individuals over a 2 1/2-year period, wherein the annual rate of interest charged was between 200 and 300%, in violation of N.J.S.A. 2A:119A-1. He was sentenced on the latter seven charges to consecutive 2-3-year State Prison terms, and on the former charge to a State Prison term of 10-15 years, to be served consecutively to the sentences imposed on the seven charges. In all, he was given State Prison sentences totalling 24-36 years.
Before considering the issues raised on this appeal, we pause to point out that defendant neither testified nor called any witnesses in his defense, and we find the uncontradicted proofs of the State amply supported the convictions.

I

CONSTITUTIONALITY OF N.J.S.A. 2A:119A-3
Defendant argues that N.J.S.A. 2A:119A-3 is unconstitutional because of vagueness, in that "it does not spell out the degree or details of `engaging in the business' of making loans." The statute provides:

2A:119A-3. Business of making prohibited loans or forbearances; penalty
Any person who engages in the business of making loans or forbearances prohibited by section 1 of this act, or who conspires so to do, shall be guilty of a high misdemeanor and shall be punished by a fine of not more than $10,000.00, or by imprisonment for not more than 25 years, or both.
The contention is without merit. Reading, as we must, N.J.S.A. 2A:119A-1 through 2A:119A-4 as a whole statutory scheme to prevent and punish the crime of loan sharking, we are satisfied that men of common intelligence do not *425 have to guess at the legislative meaning or differ as to the application of the term "engages in the business of making [illegal] loans." State v. Joas, 34 N.J. 179, 185 (1961). The four sections of the loan sharking statutes must be considered as a homogeneous and consistent whole, giving effect to all their provisions. State v. Green, 62 N.J. 547, 554-555 (1973). Giving the statutory words their common, ordinary, common-sense construction, they can be defined as meaning one who carries on an enterprise, a business or a profession for profit or improvement over a period of time, as distinguished from one who commits or occasionally participates in a single act or transaction. See Webster's Third New International Dictionary (1969), 751; Black's Law Dictionary, (4 ed. 1951), 622; 58 C.J.S. Money Lenders § 1 at 852-853 (1948); Fleckenstein Brothers' Co. v. Fleckenstein, 66 N.J. Eq. 252, 256-257 (Ch. 1904).
The trial judge in clear and plain language defined the term to the jury thusly:
Now, what does the statute mean by someone who engages in the business of making loans? What do we mean by business? Well, business as used in the statute pertains in a very broad sense to all gainful activity. A business could be called occupation or work of some sort in which a person is engaged on a regular basis.
If a person engages in a certain type of transaction once and that's all, you certainly wouldn't consider that person to be in the business. If, however, that type of conduct is repeated to the extent that there is a certain regularity to that type of conduct, then it could be inferred properly that that person was in that business. It's in that sense that we use the term business that I have just read to you.
We need hardly labor the point any further since we are satisfied the statute clearly informs those concerned what is proscribed and, therefore, is not void for vagueness.

II

SCIENTER AND CRIMINAL INTENT
Defendant contends the trial judge erred in refusing to charge the jury that scienter and criminal intent were *426 essential elements of N.J.S.A. 2A:119A-1 and 3 which the State had to prove in order to convict him. We disagree.
Whether a statute provides criminal sanctions for proscribed conduct, without proving criminal intent, is a matter of statutory construction. There are areas where the evil or danger sought to be prevented is so great that the Legislature may, as a matter of public policy, declare an act unlawful without proof of a wrongful intent. State v. Hatch, 64 N.J. 179 (1973); Morss v. Forbes, 24 N.J. 341, 358 (1957). We believe the Legislature felt loan sharking is of that invidious caliber. We would have to be very naive to believe that one who loans money to individuals at annual interest rates in excess of the lawful rates (here it was 200-300%) does not know he is violating the law.

III

PROSECUTOR'S SUMMATION
Defendant argues the prosecutor's comments in summation deprived him of a fair trial. The comments complained of consisted of a reference to defendant, by way of sarcasm, as a "giant angel"; likened defendant to Shakespeare's Shylock in exacting a "pound of flesh"; and in referring to a specific loan made by defendant, said the borrower had "his guts torn out." These were strong comments, but in the light of the evidence, defense counsel's summation, and the nature of the charges and proofs, they were justifiably made and can hardly be deemed sufficiently prejudicial to warrant a reversal. United States v. La Sorsa, 480 F.2d 522, 526 (2 Cir.1973), cert. den. 414 U.S. 855, 94 S.Ct. 157, 38 L.Ed.2d 105 (1973); State v. Knight, 63 N.J. 187, 193-194 (1973); State v. Wilson, 57 N.J. 39, 50 (1970). In any event, the trial judge instructed the jury that its verdict must be based on the evidence. See United States v. Ramos, 268 F.2d 878, 880 (2 Cir.1959). If error existed, it was harmless beyond a reasonable doubt in view of the overwhelming evidence of defendant's guilt. Milton *427 v. Wainwright, 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972); Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), reh. den. 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed.2d 241 (1967).

IV

MERGER
Defendant contends the seven individual charges for loan sharking merged in the greater offense of engaging in the business of loan sharking. We agree.
The legislative intent must be garnered from the loan sharking statutes considered in their context as a whole. This is particularly true since they were passed at the same time to effectuate a given result or to overcome a certain evil. N.J.S.A. 2A:119A-1 proscribes the making of loans in the amount of $1,000 or more, at a rate in excess of the annual or equivalent legal rate of interest but not in excess of 50% per year, and designates such offenses as misdemeanors. It then provides that any person who makes a loan at an annual or equivalent legal rate of interest in excess of 50% per year, regardless of the amount or duration of the loan, is guilty of a high misdemeanor.[1]
N.J.S.A. 2A:119A-2 makes it a high misdemeanor, punishable by imprisonment for not more than 25 years, or a fine not greater than $10,000, or both, for any person to use or threaten to use force in connection with a loan made in violation of N.J.S.A. 2A:119A-1. Here the Legislature obviously intended to severely punish loan sharkers, or their agents, who commit or threaten to commit violence upon borrowers of the proscribed illegal loans.
*428 N.J.S.A. 2A:119A-3, as previously set forth herein, seeks to reach those who engage in the business of loan sharking, as distinguished from those involved in an isolated transaction. And, here again, the Legislature considered the business of loan sharking a menace and detriment to the public welfare, and prescribed the severe penalties for violators of imprisonment for not more than 25 years, or a fine not greater than $10,000, or both.
N.J.S.A. 2A:119A-4, not applicable here, made it a misdemeanor punishable by a maximum of three years' imprisonment, or a fine not greater than $25,000, or both, for any person who knowingly possesses, maintains or has control over anything used to record the proscribed loan sharking transactions.
Viewing these statutes as indicated, we are satisfied that one is not guilty of engaging in the business of loan sharking unless it is shown that various loans are made as part of a continuing criminal impulse, namely, to engage in the business of loan sharking. Here, the proofs were not controverted that defendant made at least seven loans proscribed by N.J.S.A. 2A:119A-1 to four different individuals over a period of 2 1/2 years. This was the kind of illegal business the Legislature sought to prevent. For an incisive discussion of the evils of loan sharking, see "Syndicate Loan-Shark Activities and New York's Usury Statute," 66 Colum. L. Rev. 167 (1966).
The seven separate illegal loans were constituent elements of the greater offense of engaging in the business of loan sharking and therefore merged in the conviction of the greater offense. They cannot be fractionalized according to its component parts. State v. Riley, 28 N.J. 188, 195 (1958), app. dism., 359 U.S. 313, 79 S.Ct. 891, 3 L.Ed.2d 832 (1959); State v. Mowser, 92 N.J.L. 474 (E. & A. 1919); Note, "Twice in Jeopardy," 75 Yale L.J. 262, 318-319 (1965). See also, Final Report New Jersey Penal Code, § 2C:1-7 and Commentary.
*429 In enacting N.J.S.A. 2A:119A-3 the Legislature intended to punish a course of conduct (engaging in the business of loan sharking); therefore, all violations that spring from that singleness of thought and deed are but one offense. United States v. Universal C.I.T. Credit Corp., 344 U.S. 218, 73 S.Ct. 227, 97 L.Ed. 260 (1952). See also, State v. Di Rienzo, 53 N.J. 360 (1969); State v. Mills, 51 N.J. 277, 289 (1968), cert. den. 393 U.S. 832, 89 S.Ct. 105, 21 L.Ed.2d 104 (1968). This principle was enunciated by Otto Kirchheimer in "The Act, The Offense and Double Jeopardy," 58 Yale L.J. 513 (1949):
The unifying element in the cases where "consumption" or "subsidiarity" may be called into play exists in the perpetrator's own mind and in his ultimate goal. Whatever appears to him as the principal object of his criminal endeavors becomes the main object of the law's protection. All other stages or aspects of his action, be they antecedent, simultaneous, or posterior, would assume independent significance only if their perpetration would endanger a different social interest; otherwise, they merge in the offense category protecting the interest towards which the main attention of the perpetrator is directed. [at 522; emphasis added]
If the Legislature had intended to make individual loan sharking acts separate offenses, it would have so provided. Having failed to do so, it is reasonably inferable that the individual offenses merged in the greater offense, because without proof of the individual offenses the crime of engaging in the business of loan sharking could not be proven. The "rule of lenity" which has been often applied in construing legislation should be utilized to prevent multiple convictions where none was intended. See Heflin v. United States, 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407 (1959); Ladner v. United States, 358 U.S. 169, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958); Bell v. United States, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955); 8 Moore, Federal Practice, § 8.07(2) at 8-60 to 8-61 (1973). The philosophy behind the rule was expressed by Justice Frankfurter thusly:
*430 It is not to be denied that argumentative skill, as was shown at the Bar, could persuasively and not unreasonably reach either of the conflicting constructions. About only one aspect of the problem can one be dogmatic. When Congress has the will it has no difficulty in expressing it  when it has the will, that is, of defining what it desires to make the unit of prosecution and, more particularly, to make each stick in a faggot a single criminal unit. When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity. And this not out of any sentimental consideration, or for want of sympathy with the purpose of Congress in proscribing evil or anti-social conduct. It may fairly be said to be a presupposition of our law to resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment. This in no wise implies that language used in criminal statutes should not be read with the saving grace of common sense with which other enactments, not cast in technical language, are to be read. Nor does it assume that offenders against the law carefully read the penal code before they embark on crime. It merely means that if Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses, when we have no more to go on than the present case furnishes. [Bell v. United States, 349 U.S. supra, at 83-84, 75 S.Ct. at 622]
In view of the nature of the crime here involved, we find no abuse of the trial judge's sentencing discretion on the first count.
Having decided that the seven lesser included offenses (counts 2 to 8 in the indictment) merged in the greater offense (count 1 of the indictment), we reverse the convictions on the seven individual counts for loan sharking, and vacate the sentences imposed thereon. We affirm the conviction for unlawfully engaging in the business of loan sharking.
NOTES
[1] It was under this latter provision that the seven counts were premised since the annual or equivalent rate of interest allegedly charged exceeded 50%.