In the Matter of the Petition of DIAKAN LOVE, S.A., Petitioner,

v.

**AL–HADDAD BROS. ENTERPRISES, INC., Respondent,**

and

**Morgan Guaranty Trust Company of New York, Garnishee.**

No. 84 Civ. 1088 (PNL).

United States District Court, S.D. New York.

April 16, 1984.

Olwine, Connelly, Chase, O'Donnell & Weyher, Renato C. Giallorenzi and Robert J. Kochenthal, Jr., New York City, for petitioner.

Hill, Betts & Nash, John C. Mamoulakis, New York City, for respondent.

Davis, Polk & Wardwell, Philip C. Potter, Jr., and James L. Kerr, New York City, for garnishee.

## OPINION AND ORDER

LEVAL, District Judge.

Al-Haddad Bros. Enterprises, Inc., a Tennessee Corporation, moves to vacate the attachment of its interest as beneficiary of an irrevocable letter of credit served on the confirming bank. Morgan Guaranty Trust Company of New York, the garnishee, joins in the motion.

### I.

On February 15, 1984, Diakan Love, S.A. filed a verified petition in this court naming Al-Haddad as respondent seeking confirmation of an arbitration award for breach of a charter party. The amount of the award was $247,602.98. The petition was not served on the respondent, Al-Haddad, but instead it was accompanied by an affidavit that Al-Haddad could not be found within the district and included a prayer for issuance of process of attachment and garnishment of goods, chattels, credits and effects belonging to Al-Haddad.

Al-Haddad has offices in Nashville in the business of exporting grain and other commodities to middle eastern customers. Before this action was commenced, in transactions apparently unrelated to its dispute with Diakan, it was furnished with two irrevocable letters of credit naming it as beneficiary in connection with contracts to sell yellow corn to a purchaser in Baghdad. *See* Kennedy Aff. Exhs. B, D. The letters of credit were issued by Rafidain Bank, Baghdad, subject to the Uniform Customs and Practice for Documentary Credits ("UCP") at the instance of Rafidain's customer, the purchaser of the corn. Each required the presentation of specified documents as a condition of payment of drafts drawn on it. *See* N.Y.U.C.C. § 5–107(1).

As to the first letter, No. 9087, for $29,568,000, issued December 29, 1983, Morgan Guaranty served as advising bank. Accordingly Morgan had no contractual obligation to honor drafts drawn on it. *See* N.Y.U.C.C. § 5–107(1).

As to the second letter, No. 9249, for $7,832,000, issued Jan. 5, 1984, it was confirmed by Morgan Guaranty, which accordingly was contractually committed to honor drafts which conformed to the letter's requirements. *See* N.Y.U.C.C. § 5–107(2).

On February 15, Diakan served Morgan Guaranty with Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for certain Admiralty and Maritime claims. As of that date Al-Haddad had not sought to collect payment under either letter of credit.

Al-Haddad's attorney states he learned of the garnishment from an attorney for Morgan Guaranty on February 17. On February 21, Al-Haddad made a general appearance in this action and asked that the attachment be vacated as it was not necessary to obtain jurisdiction. Diakan

opposed. The parties discussed but did not reach accommodation.

On February 22, Al-Haddad presented drafts and conforming documents under the confirmed letter of credit to Morgan Guaranty. (The record does not indicate when Al-Haddad had come into possession of the conforming documents.) The bank withheld from its payment to Al-Haddad the amount specified in the attachment. Al-Haddad then moved to vacate the attachment. Morgan Guaranty joins in the application.

## II.

The motion poses the question whether Diakan's service of the writ on Morgan Guaranty constituted an effective attachment of property of Al-Haddad. This turns on whether Al-Haddad's interest as beneficiary in an executory letter of credit constituted either attachable property of Al-Haddad in the hands of Morgan or a debt owed to Al-Haddad by Morgan. I rule that it did not and accordingly vacate the attachment.

In the first place, it would be stretching the conventional meaning of words to consider the beneficiary's interest in a letter of credit as either its property in the hands of the bank or a debt owed to it by the bank. This is absolutely clear as to the first letter on which Morgan's role was solely that of advising bank. Upon Al-Haddad's presentation of documents conforming to the letter Morgan would have had no obligation to pay; it would have been free at its election to advance funds, anticipating reimbursement by the issuing bank, or to decline to do so.

Diakan argues that, nonetheless, a different conclusion is warranted on the second letter of credit, for which Morgan played the role of confirming bank and therefore had undertaken a contractual obligation to pay Al-Haddad for the issuing bank's account upon Al-Haddad's presentation of conforming documents.

Even on Morgan's confirming role, however, it would be stretching conventions to conclude that, *prior to Al-Haddad's presentation of conforming documents*, Mor-

gan was either indebted to Al-Haddad or held any of its property. Morgan had received no property of Al-Haddad. Its books would have showed no debt owed to Al-Haddad. What it had done by acceptance of the confirming role on Rafidain's letter of credit was to undertake a commitment to Rafidain (which in turn had undertaken the same obligation to its customer), that, if and when Al-Haddad were to present conforming documents, Morgan would advance money against the letter for Rafidain's account. Although Morgan's acceptance of the confirming role made its payment of Rafidain's letter obligatory rather than optional, its commitment was nonetheless executory and contingent. *See Robinson v. O.F. Shearer & Sons, Inc.*, 429 F.2d 83, 85–86 (3 Cir.1970); *Schirmer Stevedoring Co., Ltd. v. Seaboard Stevedoring Corp.*, 306 F.2d 188, 193 (9 Cir. 1962). The obligation of Morgan to pay would not arise unless and until Al-Haddad performed such acts as put it in possession of conforming documentation and presented such documentation to Morgan, none of which would necessarily occur.

The conclusion that the beneficiary's interest in an executory letter of credit is not attachable property is further supported by the multi-party relationship which the letter constitutes. Whatever the interest of the beneficiary may be, the letter also implicates interests of at least the issuing bank and its customer who will often have posted security for the issuance of the letter. To permit the attachment on the theory that the letter represents simply property of the beneficiary would ignore and confound the inseparable interests of other parties.

I conclude that Morgan's contingent obligation did not constitute either attachable property of Al-Haddad or a debt owed to Al-Haddad. In similar circumstances, the Court of Appeals for the Fifth Circuit dismissed an action in which jurisdiction was assertedly predicated upon the service of a writ of garnishment upon a bank with respect to the defendant's interest as beneficiary in documentary letters of credit is-

sued by the garnishee. *Sisalcords do Brasil Ltd. v. Fiacao Brasileira,* 450 F.2d 419 (5 Cir.1971), *cert. denied,* 406 U.S. 919, 92 S.Ct. 1771, 32 L.Ed.2d 118 (1972).

I do not, however, rest my decision solely on the executory and contingent nature of Morgan's obligation. Under different circumstances involving the assignment of royalty rights, the New York Court of Appeals found the existence of attachable property where the obligation of the garnishee to pay the defendant was contingent on the garnishee's receipt of royalties. *ABKCO Industries, Inc. v. Apple Films, Inc.,* 39 N.Y.2d 670, 385 N.Y.S.2d 511, 350 N.E.2d 899 (1976). *ABKCO* is distinguishable on several grounds, including that there the attached obligation, although unmatured and contingent on the garnishee's receipt of assigned royalties, was not executory as to future performance by the obligee-defendant. *See* 7A Moore's Federal Practice ¶ B.04 at B–161 (1983).

But more important in distinguishing *ABKCO* and in supporting the conclusion here reached is the special role and nature of the letter of credit.

The letter of credit is of central importance to international trade. It permits buyers and sellers to perform their transactions at thousands of miles distance from one another without risk that the money or the goods will not be forthcoming from the other. This is so in large part because banks around the world will pay upon each other's documentary credits with assurance of honor by the issuer of the credit. The letter of credit can be seen as an essential lubricant that permits the wheels of international trade to turn.

The ability of the letter of credit to perform this significant function would be severely impaired if asserted creditors were able to block their payment through service of attachment on an issuing or confirming bank of the intangible interest of the beneficiary. Financiers around the world could no longer be confident of the fulfillment of the expectations represented by a letter of credit and would cease to advance payments in reliance on their integrity. Morgan's very persuasive papers sketch a number of circumstances in which conventional financing of export and foreign trade transactions would be frustrated.

For example:

Letters of credit commonly may be negotiated by the beneficiary at banks other than the issuing or confirming bank. Such banks freely accept drafts on such letters in confidence that the issuing bank will stand behind them. If such garnishment is permitted, the paying bank will not be reimbursed when it submits the letter to the garnishee bank.

Even as to nontransferable letters of credit which may not be presented at banks other than the issuing or confirming bank, it is nonetheless common for other banks to issue back-to-back letters of credit at the instance of the beneficiary, secured by his expectation of payment on the original letter and in favor of a third party, generally an upstream source of the goods. *See Kingdom of Sweden v. New York Trust Co.,* 197 Misc. 431, 96 N.Y.S.2d 779 (Sup.Ct. N.Y.Cty.1949); H. Harfield, *Bank Credits and Acceptances* 192–94 (5 ed. 1974). If such garnishment were permitted, the bank that issued the back-to-back credit would be unable to realize the security on which it had confidently relied.

It is common for a beneficiary (often a seller of goods) to assign its right to receive proceeds to the party from whom it obtains the goods. *See* H. Harfield, *Bank Credits and Acceptances* 191–92 (5 ed. 1974). Also commonly the beneficiary expects to satisfy its freight obligations out of the proceeds of the letter. In the former case, the upstream seller may have released the goods in reliance on the effectiveness of the assignment of the beneficiary's right to receive payment, but will not be paid. In the latter case, the carrier will not release the goods without payment. If necessary the carrier will sell a portion of the goods to satisfy freight charges incurred. Accordingly the account party, being the purchaser of the goods, will not receive the goods contracted for.

In all such cases, the expectations supported by letters of credit will be unfulfilled. It is likely that the entire chain of interlinked contracts necessary to accomplish a completed purchase and sale in international trade will be frustrated. Innocent parties will be injured. Law suits will proliferate. But most importantly, if uncertainties of this order surround letters of credit, financiers will cease to extend credit in reliance on them. Such letters will cease to perform their essential role in facilitating international trade, which as a result will be very substantially impaired.

Courts generally have shown solicitude for preserving the dependability of letters of credit. Such concerns have arisen primarily where the account party has sought to enjoin performance of the letter of credit. For example, at the time of the Iranian revolution, when numerous U.S. account parties sought to enjoin payment of guarantee letters of credit on the grounds that the new Iranian authorities might draw on them in breach of the contractual understandings upon which they were issued, the Court of Appeals declined to grant such injunctions. In *KMW International v. Chase Manhattan Bank, N.A.*, 606 F.2d 10, 14 (2 Cir.1979), the Court of Appeals cited the observation of a "leading commentator" that "[t]he financial value of the letter of credit promise is predicated upon its degree of legal certainty" citing B. Kozulchyk, Commercial Letters of Credit in the Americas § 18.04[1] at 394–95 (1966). *See also American Bell Int'l, Inc. v. Islamic Republic of Iran*, 474 F.Supp. 420 (S.D.N.Y.1979), *stay pending appeal denied*, No. 79–7537 (2 Cir. Aug. 14, 1979). And when an injunction was allowed, this was only on a showing of fraud by the beneficiary, or related parties, in drawing on the letter and where no "holder in due course" interests were involved. *Rockwell International Systems, Inc. v. Citibank, N.A.*, 719 F.2d 583 (2 Cir.1983). *See also* N.Y.U.C.C. § 5–114; *United Bank Ltd. v. Cambridge Sporting Goods Corp.*, 41 N.Y.2d 254, 392 N.Y.S.2d 265, 360 N.E.2d 943 (1976); *Sztejn v. J. Henry Schroder*

*Banking Corp.*, 177 Misc. 719, 31 N.Y.S.2d 631 (Sup.Ct.N.Y.Cty.1941).

I conclude that Diakan's service of its garnishment upon Morgan did not effectively attach property of Al-Haddad prior to Al-Haddad's appearance in the action. *Iran Express Lines v. Sumatrop, AG*, 563 F.2d 648 (4 Cir.1977), on which Diakan relies, is distinguishable on at least two grounds: First, no letter of credit was involved; second, as to a portion of the obligation, the defendant had fully performed so that a part of the obligation was no longer executory.

Jurisdiction may be obtained by attachment under Rule B only if the defendant is not to be found in the district. Since Al-Haddad had appeared in the action prior to the time when it drew on the letter at Morgan, I need not consider whether upon that later occurrence the attachment could become effective against the sums which became payable by Morgan to Al-Haddad.

Al-Haddad's motion to vacate the attachment is hereby granted.

SO ORDERED.