FURNESS WITHY (CHARTERING), INC., PANAMA, Plaintiff,

v.

WORLD ENERGY SYSTEMS ASSOCIATES, INC., et al., Defendants.

TEXAS CHARTERING, INC., et al., Plaintiffs,

v.

WORLD ENERGY SYSTEMS ASSOCIATES, INC., et al., Defendants.

UNION PLANTERS NATIONAL BANK OF MEMPHIS, Plaintiff,

v.

WORLD ENERGY SYSTEMS ASSOCIATES, INC., et al., Defendants.

GULF MOTORSHIPS, INC., Plaintiff,

v.

WORLD ENERGY SYSTEMS ASSOCIATES, INC., Defendant.

Nos. 83–2207, 83–2208, 83–2251 and 83–2353 MA.

United States District Court, W.D. Tennessee, W.D.

Oct. 24, 1985.

Marion S. Boyd, Jr., Thomas J. Walsh, Jr., Memphis, Tenn., for Union Planters Nat. Bank.

Frank C. Byrd, Memphis, Tenn., for Bertel Shipping Co., Inc.

D. Charles Holtz, Mobile, Ala., for Warrior Tombigbee Transp.

Joseph D. Cheavens, Baker & Botts, Houston, Tex., and Jeff Feibelman, Burch, Porter & Johnson, Memphis, Tenn., for Texas Chartering, Inc., and Hemmert Intern.

R. Grattan Brown, Jr., Memphis, Tenn., for North Carolina Nat. Bank.

William C. Bateman, Jr., Memphis, Tenn., for Cooper Stevedoring Co.

Thomas S. Rue, Mobile, Ala., for World Energy Systems, Wesa, Inc., Hemmert Intern., Bertel Shipping Co., Johnstone, Paul Liu and Ed Bales.

Saul C. Belz, Penelope W.S. Register, Memphis, Tenn., for Gulf Motorships, Inc.

Gene M. Sellers, Michael R. O'Donnell, Birmingham, Ala., for Western Mining Co.

Charles C. Harrell, Ernest Williams, III, Memphis, Tenn., for Furness Withy (Chartering), Inc. (Panama).

Allen S. Blair, Memphis, Tenn., for Nerco, Inc.

Richard H. Allen, Thomas W. Bell, Jr., Memphis, Tenn., for P & O Falcoal, Inc.

Dennis B. Ragsdale, Knoxville, Tenn., for J.M. Jackson & Associates.

William J. Landers, D. Andrew Byrne, Memphis, Tenn., Attorney's Lien.

## ORDER

McRAE, Chief Judge.

The common issues to be resolved in each of the above cases are whether there was an effective and perfected assignment of proceeds by the beneficiary of a documentary letter of credit and whether certain maritime attachments levied by creditors of beneficiary against the letter of credit were valid.

World Energy Systems Associates, Inc., also known as Wesa, Inc. (WESA) was at all time relevant herein, an international coal trader. In early 1983, WESA arranged the sale of a quantity of coal to the Taiwan Power Company in Taipei, Republic of China. In return, an irrevocable documentary letter of credit was issued by the City Bank of Taipei, number 3TH2/00059/UD, having a face value of $2,523,500, naming WESA as beneficiary. Under the terms of the letter of credit, Manufacturers Hanover Trust Company of New York (Manufacturers Hanover) was to act as negotiating bank, and Union Planters National Bank of Memphis, Tennessee (Union Planters) was to act as advising bank. Upon presentment of conforming documents as specified in the letter of credit, Union Planters was to honor drafts drawn under the credit. Union Planters came into possession of the letter of credit on January 28, 1983.

The coal to be shipped by WESA was acquired from North Carolina National Bank (NCNB) and P & O Falcoal, Inc. (Falcoal). On March 13, 1983, the coal was loaded aboard the *Panama Star* in Mobile, Alabama, for shipment to Taiwan. On March 16, 1983, WESA presented the shipping documents to Union Planters. This initial presentment, however, was rejected by Union Planters as non-conforming because of an incorrect certificate of analysis. A second presentment was made and was found by Union Planters to conform on March 23, 1983. Union Planters, however, had requested reimbursement from Manufacturers Hanover the day before on March

22, 1983, based upon the assurance by WESA that a corrected certificate of analysis would be forthcoming on March 23, which indeed it was. Union Planters notified City Bank of Taipei that the documents were in conformity and that it had requested reimbursement in a communique dated March 22, 1983. The funds were received by Union Planters on March 23, 1983.

In the interim, WESA purportedly assigned portions of the proceeds of the letter of credit to various parties. These assignments all took place between February 25, and March 16, 1983, and were designated as irrevocable. The assignments were effected as follows:

1. By telex dated February 25, 1983, WESA authorized and directed Union Planters to pay $35,000 to Nerco, Inc. (Nerco) out of the proceeds of the credit when drawn. This was confirmed by Union Planters to the assignee on February 25, 1983.

2. By telex dated February 27, 1983, WESA authorized and directed Union Planters to pay up to $1,200,000 (the precise amount to be determined by a specified formula) to NCNB out of the proceeds of the credit when drawn. This eventually amounted to $813,360.59, and was confirmed by Union Planters to the assignee on March 1, 1983.

3. By telex dated February 27, 1983, WESA authorized and directed Union Planters to pay $143,901 to Union Planters for payment on a note, though such note was already covered by prior perfected security interests, the payment to be out of the proceeds of the credit.

4. By telex dated February 27, 1983, WESA authorized and directed Union Planters to pay $137,979.17 to Falcoal out of the proceeds of the credit. This was confirmed by Union Planters to the assignee on February 28, 1983.

5. By telex dated February 27, 1983, WESA authorized and directed Union Planters to pay $35,000 to Cooper Stevedoring Company, Inc. (Cooper) out of the proceeds of the credit. This was confirmed by Union Planters to the assignee on March 1, 1983.

6. By telex dated February 27, 1983, WESA authorized and directed Union Planters to pay $8,000 to Western Alabama Mining Company (Western Alabama) out of the proceeds of the credit. This was confirmed by Union Planters to the assignee on March 1, 1983.

7. By agreement dated February 28, 1983, WESA assigned all its right, title, and interest in and to the credit and its proceeds to Union Planters.

8. By telexes dated on or about March 11, 1983, and March 12, 1983, WESA authorized and directed Union Planters to pay up to $250,000 (the precise amount to be determined by a specified formula) to Falcoal. The actual amount assigned totaled $225,512.45. This was confirmed by Union Planters to the assignee on March 14, 1983.

9. On March 16, 1983, at approximately 12:45 p.m., Union Planters received from Paul Liu, executive director, on behalf of WESA an executed Assignment of Letter-of-Credit Proceeds authorizing and directing Union Planters to pay $10,000 to Bertel Shipping Company, Inc. (Bertel) from the proceeds of the credit. This was confirmed by Union Planters to the assignee on March 21, 1983.

10. On March 16, 1983, at approximately 12:45 p.m., Union Planters received from Paul Liu, executive director, on behalf of WESA an executed Assignment of Letter-of-Credit Proceeds authorizing and directing Union Planters to pay $20,000 to the law firm of Johnstone, Adams, May, Howard & Hill (Johnstone) from the proceeds of the credit. This was confirmed by Union Planters to the assignee on March 21, 1983.

11. On March 16, 1983, at approximately 1:30 p.m., Union Planters received from Paul Liu, executive director, on behalf of WESA an executed Assignment of Letter-of-Credit Proceeds authorizing and directing Union Planters to pay $267,000 to Falcoal from the proceeds of the credit. This

was confirmed by Union Planters to the assignee on March 21, 1983.

12. On March 16, 1983, at approximately 2:29 p.m., Union Planters received from Paul Liu, executive director, on behalf of WESA an executed Assignment of Letter-of-Credit Proceeds authorizing and directing Union Planters to pay $424,000 ("or remaining balance" of the proceeds of the credit) to J.M. Jackson & Associates, Inc. (Jackson) from the proceeds of the credit. This assignment actually amounted to $121,141.31. It was confirmed by Union Planters on March 21, 1983.

On March 15, 1983, Furness Withy (Chartering), Inc., Panama (Furness Withy) brought suit in this Court, No. 83–2207–MA, seeking to have confirmed a pair of arbitration awards on a contract of affreightment rendered on its behalf and against WESA. Furness Withy commenced suit by causing process of maritime attachment and garnishment to be issued against all of WESA's assets then in the hands of Union Planters. A second suit was filed against WESA together with Paul Liu (Liu) and Ed Bales (Bales), by Texas Chartering, Inc. and Hemmert International Corporation (Texas/Hemmert) on March 15, 1983, No. 83–2208–MA. This suit sought to recover on a demand promissory note executed by WESA and guaranteed by Liu and Bales. This suit was commenced by Texas/Hemmert's causing process of maritime attachment and garnishment and process of maritime arrest to be issued against all of WESA's assets then in the hands of Union Planters.

Union Planters responded to both of the attachments on March 23, 1983, stating that at the time process was served, the only property, debt or effects belonging to [WESA] which the garnishee had in its possession or control was a checking account in the name of WESA, Inc. having a balance of $1,568.95, which amount had been set off against [WESA's] debt to the bank covered by a prior perfected security interest. The writs were thus returned by Union Planters unsatisfied.

On March 25, 1983, Union Planters brought an action in interpleader, No. 83–2251–MA. The stake, $1,672,993.52, represented the remainder of the proceeds of the letter of credit; Union Planters had set off $632,169.89 as the amount to which it claimed to be entitled due to its preexisting secured interest in the property of WESA, and its rights as an assignee of the proceeds. In addition to the assignees and the lien creditors of WESA who had sought to attach the proceeds, the complaint named WESA and Warrior Tombigbee Transportation Company (Warrior Tombigbee) as defendants, even though WESA and Warrior Tombigbee do not claim an interest in the stake.

On April 29, 1983, Gulf Motorships, Inc. (Gulf Motorships) brought action No. 83–2353–M against WESA for breach of contract. While process of maritime attachment and garnishment was prepared, none was actually served. Nevertheless, Gulf Motorships was named as a defendant in the interpleader action.

## THE ASSIGNMENTS

The parties have essentially stipulated to the application of the law of Tennessee in this instance. The applicable section of the Uniform Commercial Code, as adopted in Tennessee, *Tenn.Code Ann.* § 47–5–116, states in pertinent part:

47–5–116. Transfer and assignment.—
(1) The right to draw under a credit can be transferred or assigned only when the credit is expressly designated as transferable or assignable.

(2) Even though the credit specifically states that it is nontransferable or nonassignable the beneficiary may before performance of the conditions of the credit assign his right to proceeds. Such an assignment is an assignment of a contract right under chapter 9 of this title on Secured Transactions and is governed by that chapter except that:

(a) the assignment is ineffective until the letter of credit or advice of credit is delivered to the assignee which delivery

constitutes perfection of the security interest under chapter 9 of this title; and

\*  \*  \*  \*  \*  \*

(c) after what reasonably appears to be such a notification has been received the issuer may without dishonor refuse to accept or pay even to a person otherwise entitled to honor until the letter of credit or advice of credit is exhibited to the issuer.

Texas/Hemmert and Furness Withy contend that the language of the assignments, even in light of § 47–5–116(2)(a) and (c), was not effective to assign the proceeds of the letter of credit. The quoted language of the assignments reads as follows:

This instruction is not a transfer of the [letter of] credit, does not give the designated payee any interest therein, and affects neither our right nor yours to agree to accept any amendments thereto, the cancellation thereof, or any substitution. Therefore, we warrant to you that we have not and will not, by negotiation of drafts or otherwise, assign the right to receive the whole or any part of such proceeds or give any other authorization or direction to make any payment thereof to any third party.

■ By contending that the recitation by WESA that the assignment was not a transfer of any interest in the letter of credit and that the reservations of rights which followed together rendered the assignments null and void, Texas/Hemmert and Furness Withy have attempted to obfuscate the issue. The language of the assignment simply recites the principle that, the assignment of the right to proceeds is not the same as an assignment of an interest in the letter of credit. It follows that any of the rights held by the beneficiary in the letter of credit itself prior to assignment of the proceeds are not altered following the assignment. The recitation of this in the language of the assignment, therefore, cannot detract from its effectiveness as an assignment of the proceeds.

■ Moreover, Furness Withy and Texas/Hemmert assert that the fact that WESA instructed Union Planters to make the assignments rendered them void, citing

*Miller v. Wells Fargo Bank Int'l Corp.*, 406 F.Supp. 452, 473 (SDNY 1975), *aff'd* 540 F.2d 548 (2d Cir.1976), for the proposition that "an instruction by one party to his obligor to pay a second party does not constitute an assignment of that obligation." Since Union Planters as advising bank was not an obligor of WESA, this argument is not appropriate. *See Diakan Love, S.A. v. Al-Haddad Bros. Enterprises, Inc.*, 584 F.Supp. 782 (SDNY 1984).

Section 47–5–116(2)(a) provides that the assignment of proceeds of a letter of credit is effective upon delivery of the letter of credit or advice of credit to the assignee, "which delivery constitutes perfection of a security interest under chapter 9 of this title." The relevant section of *Tenn.Code Ann.* § 47–9–305 described the proper method of perfection:

When possession by secured party perfects security interest without filing.—A security interest in letters of credit and advices of credit (subsection (2)(a) of § 47–5–116), ... may be perfected by the secured party's taking possession of the collateral. If such collateral other than goods covered by a negotiable document is held by a bailee, the secured party is deemed to have possession from the time the bailee received notification of the secured party's interest. A security interest is perfected by possession from the time possession is taken without relation back and continues only so long as possession is retained, unless otherwise specified in this chapter. The security interest may be otherwise perfected as provided in this chapter before or after the period of possession by the secured party.

■ By its express terms, § 47–9–305 was meant to apply in situations covered by § 47–5–116(2)(a). Thus, an assignment of the proceeds of a letter of credit can be perfected in one of two ways: (1) delivery of the letter of credit to the assignee or (2) delivery of the letter of credit to a bailee or an agent of the assignee. *See* § 47–9–305 Comment 2. In this instance, the letter of credit was in the possession of Union Planters from January 28, 1983. Therefore, if it is found that Union Planters acted on be-

half of the assignees, or as a bailee, the assignments on their behalf were perfected by Union Planters' possession.

■ From the facts before the Court, WESA and Union Planters had agreed that Union Planters was to remain in possession of the letter of credit on behalf of itself and the other assignees. Perfection by possession is designed to provide notice to third parties that the beneficiary's interest in the letter of credit, or in this case, the proceeds, is not unencumbered. *See In re Copeland*, 531 F.2d 1195, 1204 (3d Cir. 1976). Thus, so long as the agent or bailee is not under the dominion or control of the debtor, such as the debtor's not having free access to the collateral, an agency or bailment sufficient to satisfy § 47–9–305 has been created. *See Clarkson Co. Ltd. v. Shaheen*, 533 F.Supp. 905 (SDNY 1982). The evidence supports a lack of intent by WESA to ever take possession of the letter of credit. In his deposition, Walter Baker, III, then Manager of International Operations and Assistant Vice President at Union Planters, stated that he and Paul Liu (Liu), the principal of WESA, had agreed that the letter of credit was to remain in the possession of Union Planters on behalf of the assignees. In a document dated February 28, 1983, encaptioned "Assignment of Proceeds" and signed by Liu, WESA agreed to assign its rights to the entire balance of the proceeds of the letter of credit to Union Planters. Whether or not this agreement was effective is irrelevant. It is significant in that it evinces an intent by WESA to totally release the letter of credit. Indeed, there is no contention that WESA was entitled to any part of the proceeds after March 16, 1983. There was no risk, therefore, that WESA would have sought to gain possession of the letter of credit in order to collect the proceeds notwithstanding their assignment. This was doubly precluded by the fact that Union Planters itself was an assignee of the proceeds and would not have willingly surrendered the letter of credit to WESA, thereby rendering its own assignment and perfection by possession thereof void.

The fact that Union Planters had an interest in the proceeds of the letter of credit does not disqualify it from acting as an agent on behalf of the other assignees. *See, e.g., Landmark Land Co., Inc. v. Sprague*, 529 F.Supp. 971 (SDNY 1981) *rev'd on other grounds*, 701 F.2d 1065 (2d Cir.1983) (pledgee of stock may possess the pledged stock on behalf of a junior creditor of the pledgor); *In re Gemini at Dadeland, Ltd.*, 24 B.R. 57 (Bkrtcy., S.D.Fla. 1982) (bank asserting a security interest in the account in its possession may also possess the account on behalf of another bank claiming a security interest therein).

Union Planters' setoff of a portion of the proceeds was not inconsistent with its role as an agent of the assignees. It neither sought to leave the assignees with less than they were entitled to under the terms of the assignments, nor did it seek to enforce the agreement of February 28, 1983, with WESA whereby it may have been entitled to proceeds in the amount of the entire face value of the letter of credit. It simply set off the amount assigned to it by telex on February 27, 1983, plus an additional amount in satisfaction of a prior debt pursuant to which Union Planters had taken a properly perfected security interest in all of WESA's property, including after-acquired property. There is no contention that the assignees would not be fully compensated by the amount at stake.

## THE ATTACHMENTS

Texas/Hemmert and Furness Withy attempted to attach the letter of credit pursuant to Supplemental Admiralty and Maritime Claims Rule B(1).

■ Until its conditions have been performed, a letter of credit in the hands of an advising bank is neither property belonging nor a debt owing to the beneficiary, and is thus not subject to attachment or garnishment by creditors of the beneficiary. *Sisalcords do Brazil, Ltd. v. Fiacao Brasileira de Sisal, S.A.*, 450 F.2d 419, 422–23 (5th Cir.1971) *cert. denied*, 406 U.S. 919, 92 S.Ct. 1771, 32 L.Ed.2d 118 (1972); *Venizelos, S.A. v. Chase Manhattan Bank*, 425 F.2d 461, 467–68 (2d Cir.1970); *Diakan Love, S.A. v. Al-Haddad Bros. Enterprises, supra*. In this case, the conditions of

the letter of credit were not performed until March 23, 1983, the date upon which the documents were determined by Union Planters to be conforming.

■ The earliest date upon which the letter of credit could have conceivably been attached was March 22, 1983. All of the proceeds of the letter of credit, however, had been assigned by WESA by March 16, 1983. Union Planters' answer to the writs of attachment, filed on March 23, 1983, and presumably drafted before the conditions of the letter of credit had been fulfilled, was therefore accurate in its statement that Union Planters held no assets of WESA at the time of the levies. In fact, Union Planters never held property of WESA at any time subsequent to its answer. The proceeds, once forwarded, became the property of the assignees.

Whether or not the assignments did not attach until the proceeds were forwarded to Union Planters is irrelevant so far as the interests of Texas/Hemmert and Furness Withy are concerned. As discussed above, the assignees had perfected security interests in their portions of the proceeds. A security interest in after-acquired property is always perfected before it attaches, and fastens as soon as the property comes into existence. *Tenn.Code Ann.* § 47–9–204 Comment 4. Their security interests having been perfected and attached as soon as the proceeds came into the hands of Union Planters, the interests of the assignees had priority over those of Texas/Hemmert and Furness Withy, who were simply lien creditors. Consequently, given the course of events, there was no time in which Union Planters could be said to have been in possession of assets of WESA which would have been subject to attachment or garnishment.

Even assuming, *arguendo*, that for a brief period of time on March 23, 1983, the proceeds did belong to WESA, this Court entertains serious doubts as to whether attachments levied pursuant to Rule B(1) before property was acquired can reach after-acquired property. *See Reibor International Ltd. v. Cargo Carriers (Kacz Co.) Ltd.*, 759 F.2d 262 (2d Cir.1985). The

attachments were levied before the proceeds came into existence, and before WESA could conceivably have acquired them. There is no evidence that any attachments were attempted when or after the proceeds came into the hands of Union Planters.

The policy behind permitting a beneficiary to prospectively assign his rights to the proceeds of a letter of credit, while at the same time prohibiting attachment of the letter of credit by creditors of the beneficiary before its conditions have been fulfilled, is compelling. In the words of Judge Laval:

It is common for a beneficiary (often a seller of goods) to assign its right to receive proceeds to the party from whom it obtains the goods. *See* H. Harfield, *Bank Credits and Acceptances* 191–92 (5 ed. 1974). Also commonly the beneficiary expects to satisfy its freight obligations out of the proceeds of the letter. In the former case, the upstream seller may have released the goods in reliance on the effectiveness of the assignment of the beneficiary's right to receive payment, but will not be paid. In the latter case, the carrier will not release the goods without payment. If necessary the carrier will sell a portion of the goods to satisfy freight charges incurred. Accordingly the account party, being the purchaser of the goods, will not receive the goods contracted for.

In all such cases, the expectations supported by letters of credit will be unfulfilled. It is likely that the entire chain of interlinked contracts necessary to accomplish a completed purchase and sale in international trade will be frustrated. Innocent parties will be injured. Law suits will proliferate. But most importantly, if uncertainties of this order surround letters of credit, financiers will cease to extend credit in reliance on them. Such letters will cease to perform their essential role in facilitating international trade, which as a result will be very substantially impaired. *Diakan Love, supra,* at 785–86.

In this instance, most of the assignees were involved in the transaction for which

the letter of credit was issued. It is therefore appropriate that their expectations in relation to the coal shipment be realized.

Even had Gulf Motorships levied an attachment upon Union Planters when it filed its suit on April 29, 1983, the remaining proceeds had already been deposited into the registry of the Court pursuant to the suit in interpleader, leaving Union Planters undisputedly bereft of any assets belonging to WESA.

In light of the above, this Court need not reach the issues of whether the attachments were properly levied, and whether the methods employed and Rule B(1) itself as formerly constituted, were violative of the fifth and fourteenth amendments of the Constitution.

## OTHER ISSUES

It has been alleged that the assignments were somehow designed by WESA as a fraud upon its creditors, namely Texas/Hemmert and Furness Withy. No proof has been tendered in support of this allegation. In any event, WESA was within its right to prefer certain of its creditors over others. There is no showing that such preference was inequitable. In addition, there has been no showing made that bankruptcy proceedings have been initiated on behalf of or against WESA, or that WESA was at any time relevant to this action insolvent.

In addition, it has been alleged that WESA and Union Planters conspired to keep the proceeds out of the reach of Texas/Hemmert and Furness Withy. Again, no proof has been proffered suggesting that such was the case. There was nothing improper about Union Planters acting both as advising bank and a creditor of the beneficiary. Union Planters was within its rights to seek to protect its own interest in seeing that the debt owed to it by WESA was repaid. The facts lead to the very strong inference that the relationship between Union Planters and WESA was completely at arms length. Moreover, the fact that Union Planters rejected the first presentment of documents does not indicate an intent to evade the attachments levied. Union Planters was obligated to

certify that the documents were in order, and the documents were required to conform in every respect. There has been no showing that the certificate of analysis was conforming despite Union Planters' initial rejection thereof.

Accordingly, summary judgment in No. 83–2251–MA is granted in favor of the assignees—Nerco, NCNB, Falcoal, Cooper, Western Alabama, Bertel, Johnstone and Jackson. The processes of maritime attachment and garnishment levied in Nos. 83–2207–MA and 83–2208–MA and the process of maritime arrest in No. 83–2208–MA are hereby ordered quashed. If indeed process of maritime attachment and garnishment is found to have been served in No. 83–2353–M, it is also ordered quashed.

Counsel for WESA is hereby directed to prepare and submit proposed judgments as appropriate for the respective issues ruled upon herein.

IT IS SO ORDERED.