In re TRAVELERS PETROLEUM, INC., Debtor.

TRAVELERS PETROLEUM, INC., Plaintiff,

v.

INTERNAL REVENUE SERVICE, Defendant,

Federal Deposit Insurance Corporation, in its corporate capacity, Intervenor.

Bankruptcy No. 87–02556–B.
Adv. No. 87–222.

United States Bankruptcy Court, W.D. Oklahoma.

Dec. 29, 1987.

Ray K. Babb, Jr., Oklahoma City, Okl., for plaintiff.

M. Kent Anderson, Tax Division, Dept. of Justice for U.S.

Kenneth I. Jones, Jr., Jones, Blaney and Pringle, Oklahoma City, Okl., for FDIC.

## MEMORANDUM DECISION AND ORDER

PAUL B. LINDSEY, Bankruptcy Judge.

The trial of this adversary proceeding was held November 24, 1987. The Court ruled that the debtor's trucks to which a federal tax lien had attached had a value, in the aggregate, of $194,050.00 as of the date of bankruptcy. In a previous hearing, the Court had ruled that the Internal Revenue Service ("IRS") was secured in that portion of the proceeds of a note which represented those trucks sold free and clear to Fitz Freight.

At the trial, the Court took under advisement the issue of whether the debtor's trucks were "equipment" under 12A O.S. § 9–109(2) or "inventory" under 12A O.S. § 9–109(4) for purposes of determining the lien priority between the Internal Revenue Service and the Federal Deposit Insurance Corporation. Post-trial briefs were filed simultaneously by the IRS and the FDIC, and the issue is now ripe for determination.

Originally, the debtor was a general contractor which built service stations and convenience stores. Prior to 1978, debtor purchased a fleet of tank trucks and took over the supply and distribution of petroleum to Circle K convenience stores and various other customers. Because debtor purchased the gasoline from suppliers and then resold it, debtor did not need a common carrier license. However, in November, 1984, debtor stopped supplying petroleum to Circle K. Because of credit problems which resulted from that loss of business, debtor lost its ability to purchase petroleum for resale.

In order for debtor to distribute petroleum owned by others, it was necessary for debtor to have a common carrier license. In November, 1984, Travelers Development, Inc., the holding company for debtor, acquired Fitz Freight, Inc., which had a common carrier license.

Debtor subsequently leased some of its trucks to Fitz. In 1985, debtor leased the balance of the trucks to Petro–Chemical Transport, Inc. ("PCT"), which is not an affiliate of debtor.

In the summer of 1986, debtor sold all of its trucks to Fitz. As part of the transaction, Fitz executed a promissory note to the debtor representing the purchase price of the trucks.

On January 5, 1987, after the sale to Fitz, IRS perfected its federal tax lien. The trucks transferred to Fitz were the only unencumbered assets of debtor to which the federal tax lien could attach. On June 16, 1984, FDIC had perfected its security interest in all of debtor's present and after-acquired inventory.

If the leasing of the trucks to Fitz and to PCT prior to the sale of the trucks to Fitz changed the status of the trucks from equipment to inventory, FDIC AND IRS agree that FDIC has the prior perfected lien. However, if the trucks retained their status as equipment despite being leased, IRS has the prior lien, since FDIC admits it has no security interest in equipment. IRS contends that whether the trucks are inventory or equipment is determined at the time the security agreement is executed. *National Business Systems, Inc. v. Borg–Warner Acceptance Corporation*, 792 F.2d 710, 714 (8th Cir.1986). FDIC counters that the determination of whether the trucks are inventory or equipment is made at the time the security interest attaches, rather than when the security agreement is executed. *Borg–Warner Acceptance Corporation v. Dugger (In re Teel)*, 9 B.R. 85, 89 (Bankr. N.D.Tex.1981).

■ The position of IRS is that when FDIC's security agreement on the inventory was executed, on June 16, 1984, it is undisputed that the trucks were being used as equipment and so they would continue to be equipment even if their use was converted to inventory. That argument ignores the fact that FDIC's security interest extended to after-acquired inventory. A security interest in after-acquired property attaches only when the property is acquired, and thus is always perfected before it attaches. *Furness Withy (Chartering), Inc., Panama v. World Energy Systems Association*, 642 F.Supp. 50, 2 U.C.C. Rep. Serv.2d 1035, 1043 (W.D.Tenn.1985); 12A O.S. 1981, § 9–204, comment 4.

While goods cannot fit into two classifications at the same time under § 9–109, goods can change their classification to accommodate changes in circumstances. *See* 12A O.S. 1981, § 9–109, comment 2. If circumstances changed so that debtor's trucks could properly be reclassified as inventory, then FDIC's security interest would attach when the trucks acquired inventory status.

■ The key determination in this proceeding is whether the trucks originally classified as equipment, became inventory by virtue of their being leased to Fitz or to PCT.

Goods are defined to be inventory, under 12A O.S. 1981, § 9–109(4),

"if they are held by a person who holds them for sale or lease or to be furnished under contracts of service or if he has so furnished them, or if they are raw materials, work in process or materials used or consumed in a business. Inventory of a person is not to be classified as his equipment."

IRS asserts that the trucks were not "held for lease." IRS further contends that being leased is not the equivalent of being held for lease and that the distinction is determinative. FDIC argues that there is no distinction between "held for lease" and "leased," relying upon *The Chicago Home for Girls v. Carr*, 300 Ill. 478, 133 N.E. 344 (1921) (a case to enjoin the collection of taxes assessed against real estate). FDIC contends that the actual leasing transaction in this case establishes that the trucks were held for lease.

Whether there is a distinction between being "held for lease" or merely being "leased" misses the focus of the § 9–109(4) definition of inventory. Inventory, whether held for sale or lease, implies the criterion that the prospective sale or lease be in the ordinary course of business. *See* 12A O.S. § 9–109 comment 3.

IRS takes the position that the evidence establishes that the trucks were leased to Fitz to solve the common carrier licensing problem and were leased to PCT to make the best of a slow down in business. FDIC takes the contrary position that the evidence that there was more than one lease transaction, and that debtor's paving equipment was also occasionally leased, establish that debtor was engaged in the business of leasing. FDIC relies on *State v. Tillem*, 127 N.J.Super. 421, 317 A.2d 738 (1974) (a case to determine whether that defendant was engaged in the business of "loan sharking" in violation of criminal statutes), for the proposition that debtor need only be engaged in the leasing enterprise as a part of its regular business, as

opposed to occasionally participation in single transactions.

After hearing the evidence and reviewing the record and briefs, the Court has reached the conclusion that the occasional leasing of paving equipment and the various truck leases were merely steps in furtherance of debtor's plan to conserve and to employ these assets until the debtor's business could be revitalized or restructured. *See Paccar Financial Corporation v. Benton Trucking Service, Inc.),* 21 B.R. 574, 579 (Bankr. E.D.Mich.1982) (where the Court commented that the sales made as part of a plan to convert the conduct of debtor's business operation were not sales by the debtor in the ordinary course of its business).

The debtor's business is to construct convenience stores and service stations and to distribute petroleum products. The leases were merely incidental to its business purpose and did not make debtor a person in the business of leasing goods of that kind. *See id.* at 578.

Accordingly, the Court holds that all trucks at issue were equipment under § 9–109(4) at all times prior to filing of the petition herein, and are subject to the federal tax lien. Judgment will be entered granting the Internal Revenue Service lien priority as to the proceeds of the promissory note representing the sale of the trucks, in the amount of $194,050.00.