*346
 
 OPINION OF THE COURT
 

 Kaye, J.
 

 A beneficiary’s interest in an executory negotiable letter of credit supporting an international sale of goods is not property of the beneficiary for purposes of attachment by a party in unrelated litigation.
 

 In connection with a sale of disposable lighters by Iwahori Kinzoku Co. (Kinzoku), a Japanese company, to Supreme Importers and D. M. Sales Corp. of New York City, on March 1, 1984, Chemical Bank issued an irrevocable letter of credit, expiring March 30, 1984, in the amount of $111,840, identifying Kinzoku as the beneficiary. The document provided that drafts drawn against it could be negotiated by any bank,
 
 which
 
 could then present the drafts together with the conforming documents to Chemical for acceptance and payment.
 

 In an action for a money judgment against Kinzoku wholly
 
 *347
 
 unrelated to the letter of credit or the sale underlying it, petitioner served Chemical with an order attaching all debts and property of Kinzoku. Upon a search of its records, Chemical found no accounts in the name of Kinzoku, and so advised both the Sheriff and petitioner’s counsel. Chemical thereafter discovered the letter of credit, informed petitioner, and in late May was served with a second order of attachment. Both orders of attachment were confirmed by Special Term.
 

 Meanwhile, on April 12, 1984, Fuji Bank Ltd. (Fuji) in Japan negotiated a draft in the sum of $55,000 for Kinzoku, notwithstanding certain discrepancies between the documents presented and the documents required by the letter of credit, and paid Kinzoku. When it made payment, according to Fuji, it had no knowledge of the attachment or dispute between Kinzoku and petitioner. Fuji the following week presented Chemical with the draft and documents; Chemical obtained a waiver of the discrepancies from the account party and, on April 27, accepted the draft, thereby engaging to make payment within a 30-day period. Chemical paid Fuji $55,000 on May 29, 1984.
 

 On April 5, 1984, Dai-ichi Kangyo Bank Ltd. (Dai-ichi) presented Chemical with a second draft it had negotiated for Kinzoku in Japan, in the sum of $56,840 together with relevant documentation. Dai-ichi had before that time paid the full draft to its customer and claims it had no knowledge of the attachment or dispute with petitioner. Again the documents contained discrepancies from the terms of the letter of credit which were waived by the account party. On April 17, Chemical accepted the draft, thereby engaging to pay it within a 30-day period. Actual payment was not made until after service of the second attachment order. Prior to the two presentments, Chemical apparently had no knowledge of the interest of the negotiating banks.
 

 Appellant commenced this proceeding against Chemical pursuant to CPLR 6214 (d) to compel the delivery of funds representing the letter of credit, alleging that both attachment orders were applicable to the proceeds of the letter of credit. Chemical responded that the second order of attachment had been served too late because it had already accepted both drafts, and that the first order was ineffective because attachment cannot reach the proceeds of executory letters of credit.
 

 Special Term, addressing only the first order of attachment,
 
 *348
 
 concluded that the beneficiary’s interest constituted attachable property and granted the petition to the extent of directing Chemical to deliver to the Sheriff the amount of the drafts plus interest. The Appellate Division reversed, holding as to the second order of attachment, that there was nothing attachable at the time it was served because Chemical had by then accepted the drafts and thereby become unconditionally obligated to pay them upon maturity. With respect to the first order of attachment, however, the court ruled that CPLR 5201 (b) and 6202 could not be read "as authorizing creditors to reach a debtor’s contingent interest as property where the effort to do so will often preclude the maturing of that interest, is likely on a repetitive basis to impair the rights of third parties, and is certain to raise a disquieting doubt as to the capacity of letters of credit to discharge their critically important function in international transactions.” (117 AD2d 424, 431.) The Appellate Division granted leave to appeal to this court (126 AD2d 994). We now affirm.
 

 As to the second order of attachment, we agree with the court below that the issue has already been decisively determined against petitioner. In
 
 First Commercial Bank v Gotham Originals
 
 (64 NY2d 287), we recognized that an issuing bank’s obligation to pay in a commercial letter of credit transaction is fixed upon presentation of drafts and the documents specified in the letter of credit. Once the issuer accepts the drafts it becomes "directly, primarily and unconditionally obligated to the holder” and any order subsequently served on the issuer seeking to enjoin payment is too late
 
 (id.,
 
 at 297). Here, Chemical accepted the drafts under the credit, and the negotiating banks held the acceptances, before service of the second order of attachment. There having been nothing to attach at the time of service of the attachment order (CPLR 6214 [b]), Chemical plainly did not violate that order when it made payment to the negotiating banks rather than directing the funds to the Sheriff.
 

 The issues with respect to effectiveness of the first order of attachment, however, cannot be so readily resolved. The first order was served before Fuji or Dai-ichi negotiated the drafts for value and presented them to Chemical for payment. The letter of credit was therefore executory at the time the attachment order was served upon Chemical. If an order of attachment can reach a beneficiary’s interest in an executory letter of credit, Chemical would have violated that order when it
 
 *349
 
 accepted the drafts and paid the negotiating banks rather than turning over the proceeds to the Sheriff.
 

 While letters of credit have for centuries been in wide use, this issue has not arisen often in the case law. It has been the subject of two Federal court
 
 decisions
 
 — Matter
 
 of Diakan Love v Al-Haddad Bros. Enters.
 
 (584 F Supp 782) and
 
 Sisalcords Do Brazil v Fiacao Brasileira De Sisal
 
 (450 F2d 419,
 
 cert denied
 
 406 US 919), both denying attachment — but has not previously been passed on by this court.
 

 CPLR 6214 (d) provides that a levy by service of an order of attachment on a person other than defendant "is effective only if, at the time of service, such person owes a debt to the defendant or such person is in the possession or custody of property in which such person knows or has reason to believe the defendant has an interest”. The core issue here is whether Kinzoku’s interest in the letter of credit constituted a "debt” or "property” within the purview of the statute.
 

 "Any debt or property against which a money judgment may be enforced as provided in section 5201 is subject to attachment.” (CPLR 6202.) The statute requires that a "debt” for this purpose be a fixed obligation (CPLR 5201 [a]). If a debt, Kinzoku’s interest was plainly contingent and would not be subject to attachment under CPLR 5201 (a); indeed, petitioner does not contend that the interest was attachable as a debt. Petitioner focuses on the further provision that "[a] money judgment may be enforced against any property which could be assigned or transferred, whether it consists of a present or future right or interest and whether or not it is vested.” (CPLR 5201 [b].) The word "property” is undefined. To say — as petitioner does — that Kinzoku’s interest in the letter was assignable and is therefore attachable property begs the question whether the interest is "property” in the first instance. We therefore turn to the case law construing the statutory term "property.”
 

 In
 
 ABKCO Indus. v Apple Films
 
 (39 NY2d 670, 673), this court considered whether a contract right to net profits from future promotion of the Beatles film "Let It Be” was "property” within CPLR 5201 (b), so as to support an attachment for purposes of securing jurisdiction. We rejected the argument that the debtor’s contract right was too contingent because it might have no value, and held that the interest was "property” notwithstanding the uncertainties affecting its actual ultimate value. The "fact of value or lack of it”, we
 
 *350
 
 concluded, "has no legal effect on the validity of the attachment”. (39 NY2d,
 
 supra,
 
 at 675.) Dispositive instead is whether such an interest has potential economic value to the creditor. The right to receive profits from the Beatles film was deemed worthy of pursuit by the creditor, was assignable, and hence was attachable.
 

 Petitioner urges that because Kinzoku’s interest could be assigned,
 
 ABKCO
 
 dictates the invariable conclusion that it is attachable property. We disagree. Such a mechanical application of
 
 ABKCO
 
 to all questions concerning attachable interests not only would swallow up CPLR 5201 (a) in its entirety but also would require us to blind ourselves in every instance to the nature of the interest involved. We determine, therefore, that the mere assignability of Kinzoku’s interest does not warrant the conclusion that it is "property” for purposes of CPLR 5201 (b), and that in the circumstances the interest is not subject to attachment.
 

 A guiding principle in our analysis is that, while CPLR 5201 is obviously intended to have broad reach, still the Legislature expressly put beyond the grasp of the statute the general category of contingent debts, "to preclude a levy against contingent obligations not certain to ripen into something real”. (Siegel, NY Prac § 323, at 389;
 
 see also,
 
 Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C5201:5, at 53-54.)
 

 There is a different, and in a relevant sense even greater, contingency in the beneficiary’s interest here than in
 
 ABKCO.
 
 A letter of credit "is an executory contract that conditions performance of the issuer’s obligation (payment) upon performance by the beneficiary (delivery of specified documents).” (Harfield, Letters of Credit, at 79 [ALI-ABA Uniform Commercial Code Practice Handbook 1979] [Letters of Credit].) In the absence of compliance with the terms and conditions of a letter of credit, the issuing bank owes nothing to the beneficiary. Whereas the debtor’s interest in
 
 ABKCO
 
 was contingent solely as to value, which depended on events beyond its own control, Kinzoku’s interest is dependent upon its own future performance. Before payment would be due, Kinzoku would have to perform by timely shipment of the goods, compliance with the terms of the credit, and presentation of conforming documents. Given that a beneficiary of a letter of credit retains the option to defeat the interest and render it worthless, we are mindful that allowing attachment in this instance
 
 *351
 
 —unlike
 
 ABKCO
 
 — could serve as a disincentive to a beneficiary’s performance of the underlying contract as well as the terms of the letter of credit. While this contingency is particularly pertinent in a situation where the beneficiary is a seller of goods thousands of miles from New York, we nevertheless agree with the court below that even claims that depend on further action by the debtor may constitute "property” and that this distinction from
 
 ABKCO
 
 is not alone dispositive
 
 (see,
 
 117 AD2d 424, 431,
 
 supra).
 

 The more profound difference from
 
 ABKCO,
 
 however, lies in the fact that what is at issue here is Kinzoku’s interest in a negotiable letter of credit, an instrument extensively used in domestic and international trade, which because of its unique character typically implicates others than the immediate parties to the underlying transaction. The transaction before us, for example, involves not only Kinzoku and its buyer, but also the issuing bank and two negotiating banks — none of whom had any part in the dispute between petitioner and Kinzoku, yet whose interests could be affected by permitting attachment of Kinzoku’s interest in the letter of credit.
 

 We are persuaded that, for policy reasons, the rationale of
 
 ABKCO
 
 does not extend this far, and that Kinzoku’s interest for present purposes must be considered a contingent, nonattachable "debt” under CPLR 5201 (a) rather than attachable "property” under CPLR 5201 (b). Letters of credit
 
 *
 
 have been recognized "as an essential lubricant that permits the wheels of international trade to turn”
 
 (Matter of Diakan Love v AlHaddad Bros. Enters.,
 
 584 F Supp 782, 785,
 
 supra);
 
 as "indispensable to international trade” (Dolan, Letters of Credit H 3.05); and as "an invaluable tool that can be employed to facilitate an unlimited variety of transactions.” (Harfield, Letters of Credit, at 5.) "[T]he Board of Governors of the Federal Reserve System has stated that unavailability of letter of credit facilities would 'place U.S. businesses at an unnecessary competitive disadvantage in foreign markets.’ ” (Harfield, Letters of Credit, at 79, n 11.) While long known in commercial law, letters of credit have during the past decades gained acceptance in facilitating financial as well as mercantile transactions. Their peculiar value lies in the fact that by superimposing the financial strength and integrity of one
 
 *352
 
 party (typically a bank) on that of another (typically a seller) they add the virtual certainty that upon presentation of conforming documents payment will be made
 
 (see,
 
 Kozolchyk, Commercial Letters of Credit in the Americas § 18.04, at 394; Harfield, Bank Credits and Acceptances, at 19 [5th ed]). "Letters of credit provide a quick, economic and predictable means of financing transactions for parties not willing to deal on open accounts by permitting the seller to rely not only on the credit of the buyer but also on that of the issuing bank.”
 
 (First Commercial Bank v Gotham Originals,
 
 64 NY2d 287, 297-298,
 
 supra.)
 

 This peculiar utility derives from two of the fundamental principles pertaining to letters of credit.
 
 First,
 
 a letter of credit contract must be strictly construed and performed in accordance with its terms. This principle of strict construction may be illustrated by the oft-quoted statement from
 
 Equitable Trust Co. v Dawson Partners
 
 (27 Lloyd’s List L Rep 49): "There is no room for documents which are almost the same, or which will do just as well.”
 
 Second,
 
 the credit engagement is independent of the underlying contract.
 
 (See, First Commercial Bank v Gotham Originals,
 
 64 NY2d 287, 294,
 
 supra; Laudisi v American Exch. Natl. Bank,
 
 239 NY 234, 243; White & Summers, Uniform Commercial Code § 18-2, at 711-713 [2d ed]; Harfield, Letters of Credit, at 76; Dolan, Letters of Credit ]f 6.08, at 6-40.) "Banks issuing letters of credit deal in documents and not in goods and are not responsible for any breach of warranty or nonconformity of the goods involved in the underlying sales contract”.
 
 (United Bank v Cambridge Sporting Goods Corp.,
 
 41 NY2d 254, 259.) Thus, adherence to the terms of the credit as set forth in the letter of credit carries with it the virtual certainty that payment will be made.
 

 The certainty and predictability of letters of credit — and conversely, the lack of uncertainty or unpredictability — are of course important to the immediate parties, but they have an added dimension in that they induce the confidence of others, who may accept assignments or transfers or negotiate drafts for value, that so long as the terms and conditions are fulfilled the obligation to make payment will be scrupulously honored by the issuer.
 
 (See, Matter of Diakan Love v Al-Haddad Bros. Enters.,
 
 584 F Supp 782, 785,
 
 supra.)
 
 The Uniform Commercial Code itself specifies only limited circumstances when an issuer is permitted to refuse to honor a draft accompanied by facially
 
 *353
 
 conforming documents and a customer permitted to seek an injunction. (UCC 5-114 [2] [b];
 
 United Bank v Cambridge Sporting Goods Corp.,
 
 41 NY2d 254, 259,
 
 supra.)
 
 Similarly, there are few reported instances where customers have attempted to obtain analogous relief by way of attachment, and these have been viewed by commentators as threatening the foundation and utility of letters of credit by violating the independence principle
 
 (see,
 
 White & Summers, Uniform Commercial Code § 18-10, at 752-753 [2d ed]; Justice,
 
 Letters of Credit: Expectations and Frustrations
 
 — Part
 
 2,
 
 94 Banking LJ 493, 495;
 
 see also,
 
 Howard,
 
 Application of Compulsory Joinder, Intervention, Impleader and Attachment to Letter of Credit Litigation,
 
 52 Fordham L Rev 957, 993).
 

 We recognize that these situations are materially different from the case before us, but there is at least one common consideration. If an issuer’s payment is blocked by an attachment order of a plaintiff seeking to establish jurisdiction for its own unrelated dispute with the seller — thereby often embroiling the parties in a contest as to priority among creditors —it is at the cost of diminution of confidence in the certainty and integrity of letters of credit in this jurisdiction. We fully endorse the conclusion of the court below that if this attachment were upheld in the circumstances presented "it would follow in many situations that an order of attachment secured by a creditor in an effort to reach the debtor’s contingent interest would (1) cause the debtor not to take action necessary to the maturing of the claim, (2) disrupt separate contractual obligations involving unrelated parties, and (3) impair the capacity of letters of credit to discharge their important and intended functions.” (117 AD2d 424, 431,
 
 supra.)
 

 Based on the nature of Kinzoku’s interest coupled with the policy considerations involved in negotiable letters of credit concerned with international sales transactions, we conclude that for the purposes of attachment this interest is not "property” within the meaning of CPLR 5201 (b).
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Wachtler and Judges Simons, Alexander, Titone, Hancock, Jr., and Bellacosa concur.
 

 Order affirmed, with costs.
 

 *
 

 In view of the versatility of letters of credit
 
 (see,
 
 White
 
 &
 
 Summers, Uniform Commercial Code § 18-1, at 709 [2d ed]), it bears emphasis that our disposition is limited by the facts before us.