921 F.2d 32
 59 USLW 2446, 13 UCC Rep.Serv.2d 496
 ALL SERVICE EXPORTACAO, IMPORTACAO COMERCIO, S.A., Plaintiff-Appellant,
v.
BANCO BAMERINDUS DO BRAZIL, S.A., NEW YORK BRANCH, First
Chicago International Bank, Defendants,
Banco Bamerindus Do Brazil, S.A., New York Branch, Defendant-Appellant,
M.M. International Ltd., Intervenor-Appellee.
 Nos. 970, 971, Docket 90-7955, 90-7985.
 United States Court of Appeals,
Second Circuit.
 Argued Dec. 6, 1990.
Decided Dec. 20, 1990.
 
 Robert A. Cohen, New York City (Liam G.B. Murphy, Dechert Price & Rhoads, New York City, of counsel), for plaintiff-appellant.
 Robert L. Sills, Reboul, MacMurray, Hewitt, Maynard & Kristol, New York City, for defendant-appellant.
 Alan M. Unger, Sidley & Austin, New York City, for intervenor-appellee.
 Before KAUFMAN, NEWMAN and WINTER, Circuit Judges.
 IRVING R. KAUFMAN, Circuit Judge:
 
 
 1
 Commercial letters of credit have facilitated the operation of international commerce over the centuries. This heated dispute over a hill of beans involves parties from three continents and provides a telling example of the geographical reach of this method of trading. Appellant All Service Exportacao, Importacao Comercio, S.A. ("All Service"), a Brazilian company, commenced this action in a New York State court to enjoin appellant Banco Bamerindus Do Brazil, S.A., New York Branch ("Banco") and First Chicago International Bank ("First Chicago") from honoring a letter of credit. The letter was drawn in favor of appellee M.M. International ("MMI"), a Grand Cayman corporation owned by the Chinese government.
 
 
 2
 After the case was removed to federal court, Judge Haight denied All Service's motion for a preliminary injunction to prevent payment, finding that the legal proceedings had not been initiated in time. Though the draft remained in the hands of MMI, an alleged defrauding seller, Banco's acceptance of the letter of credit unconditionally obligated it to honor the draft. Since we find the district court properly applied controlling New York law, we affirm its decision.
 
 BACKGROUND
 
 3
 June 1990, MMI and All Service entered into a written agreement, whereby MMI agreed to sell 15,000 metric tons of "black beans" for $8,250,000. The price included the cost of freight from Tianjin, China to Rio de Janeiro, Brazil. To pay for the shipment, All Service arranged for an irrevocable letter of credit from Banco in favor of MMI, payable 90 days after shipment of the black beans and upon presentation of certain designated documents. The import license, referred to in the relevant papers, describes the items to be shipped as "Phaseolus vulgaris," the scientific name for a type of black bean that is a staple food in Brazil.
 
 
 4
 The beans were inspected and loaded for delivery in late July. All Service permitted the transaction to go forward without a preshipment inspection by its technical expert, as provided in the contract, because the Chinese government prevented the expert from entering the country.
 
 
 5
 Prior to the cargo's arrival in Brazil, MMI forwarded the necessary papers to First Chicago, the advising bank to MMI, together with a draft dated July 29, 1990 in the amount of $8,250,000. The documents appeared on their face to comply with the conditions set forth in the letter of credit. In August, at the request of First Chicago, Banco accepted the draft and retained physical possession of it.
 
 
 6
 The saga of the beans continued. After the shipment arrived in port, an independent inspection agency determined the beans were soybeans, rather than black beans, and presented "a general mouldy or fermented aspect, improper for human consumption." On the basis of this report, All Service decided that a fraud in the transaction had occurred. Accordingly, it sought to prevent payment pursuant to the letter of credit by seeking an injunction in a Brazilian court. On October 19, that court issued the requested injunction. One day later, MMI's agent recovered physical possession of the draft.
 
 
 7
 MMI vigorously contests All Service's allegations of fraud. It claims that during the contract negotiations, MMI delivered to All Service a sample of the beans offered for sale. Though other prospective Brazilian purchasers declined to purchase the beans following inspection, All Service found them acceptable. Moreover, after the agreement was completed, All Service alone applied for the import license which specified black beans of the phaseolus vulgaris variety. MMI contends All Service could not unilaterally alter the terms of the agreement by designating in the license a product different from the one contemplated by the parties.
 
 Proceedings Below
 
 8
 October 21, All Service commenced this action in the New York Supreme Court where a temporary restraining order prohibiting payment of the draft was entered. Banco subsequently removed the proceedings to federal court pursuant to 12 U.S.C. Sec. 632, based on the presence of a federal question involving an issue of international banking. MMI was permitted to intervene.
 
 
 9
 Judge Haight found that under applicable New York law, once Banco accepted the draft drawn upon the letter of credit, the defense based on fraud in the underlying transaction was not available. Accordingly, without holding an evidentiary hearing, he denied All Service's motion for a preliminary injunction, vacated the temporary restraining order, and entered a fifteen day stay to enable the parties to accelerate their appeal.
 
 
 10
 This Court expedited the proceedings and stayed the order pending a full hearing, on condition that Banco and All Service post security in the amount of $8,250,000. Appellants complied with this requirement. In any event, this case, all about beans, presents interesting questions of law.
 
 Discussion
 
 11
 Generally, letters of credit are designed to substitute for, and therefore support, an obligation to pay. They involve three separate, but related, contracts--the underlying sales contract between a buyer and a seller; the agreement between an issuing bank and its customer, the buyer, by which the bank agrees to issue a letter of credit; and the letter of credit itself, which is the bank's commitment to pay the beneficiary, the seller, upon compliance with terms and conditions specified in the letter of credit. See First Commercial Bank v. Gotham Originals, Inc., 64 N.Y.2d 287, 294, 486 N.Y.S.2d 715, 718, 475 N.E.2d 1255 (1985).
 
 
 12
 The issuing bank's obligation to honor drafts drawn by the beneficiary on a letter of credit is distinct from any duty owed by the buyer, its customer, under the sale of goods contract. See United Bank Ltd. v. Cambridge Sporting Goods Corp., 41 N.Y.2d 254, 259, 392 N.Y.S.2d 265, 270, 360 N.E.2d 943 (1976). The bank's obligation to pay is fixed upon presentation of documents specified in the credit and upon acceptance of the draft.
 
 
 13
 This principle of law, however, is not without limitations. For instance, Uniform Commercial Code section 5-114(2) provides that though documents may comply on their face with terms found in the letter of credit, a court may enjoin payment where it finds fraud taints the underlying transaction, unless performance is demanded by a holder in due course.[1] This exception, however, is a narrow one. Payment may be enjoined only where intentional fraud is shown, and not where the party alleges improper performance or breach of warranty. United Bank, 41 N.Y.2d at 260, 392 N.Y.S.2d at 271, 360 N.E.2d at 949.
 
 
 14
 The district court rejected appellants' argument based on section 5-114 and held U.C.C. Sec. 4-303 controlled the resolution of this dispute. Section 4-303(1)(a) provides that service of legal process seeking to terminate the bank's duty to pay "comes too late" if it follows the bank's acceptance or certification of the item.[2] Accordingly, in First Commercial Bank v. Gotham Originals, Inc., supra, the New York Court of Appeals held that where the issuing bank has accepted a draft drawn upon a letter of credit, section 5-114's narrow exception does not apply. It thus declined to entertain allegations that fraud tainted the underlying transaction. 64 N.Y.2d at 295, 486 N.Y.S.2d at 719, 475 N.E.2d at 1259. See also Supreme Merchandise Co. v. Chemical Bank, 70 N.Y.2d 344, 348, 520 N.Y.S.2d 734, 735, 514 N.E.2d 1358 (1987).
 
 
 15
 Banco and All Service attempt to distinguish the First Commercial line of authority. They claim its holding is limited to situations where payment is demanded by banks that are holders in due course and urge a different rule applies where a defrauding seller secures acceptance. Appellants reason that MMI should be enjoined from payment under the letter of credit since it induced Banco to accept the draft based on the presentation of documents which MMI knew to be false.
 
 
 16
 We agree with Judge Haight that appellants assert a distinction without legal significance. The First Commercial Court expressly declined to base its decision upon the bank's status as a holder in due course. 64 N.Y.2d at 295, 486 N.Y.S.2d at 719, 475 N.E.2d at 1259. Based on principles of statutory construction, it found that section 4-303 supersedes section 5-114's limited authorization to enjoin payment. Accordingly, because the drafts were accepted before the restraining order issued, Banco became "directly, primarily and unconditionally obligated to the holder to pay [it] at maturity." First Commercial, 64 N.Y.2d at 297, 486 N.Y.S.2d at 720, 475 N.E.2d at 1260.
 
 
 17
 In essence, appellants' grievance concerns a dispute over performance under the black bean contract, not the letter of credit. Though MMI might eventually be held responsible for selling inferior merchandise, this possibility does not establish the right to enjoin payment under the letter of credit.
 
 
 18
 In any event, our decision does not leave appellants without remedy. Banco may bring suit against All Service, who has a contractual obligation to reimburse it for payment, and All Service may proceed against MMI to recover losses sustained from the alleged failure to perform. Accordingly, a preliminary injunction to block payment would be improper. See Recon/Optical, Inc. v. Government of Israel, 816 F.2d 854, 857 (2d Cir.1987).
 
 
 19
 We note, as did the First Commercial Court, that a contrary rule would impose substantial hardships on the international credit market. Letters of credit provide a quick, economic and trustworthy means of financing transactions for parties not willing to deal on open accounts by permitting the seller to rely on the credit of the issuing bank, as well as that of the buyer. It is this reliance that permits the financing of transactions between parties in remote jurisdictions. Any exception would necessarily impede its effectiveness.
 
 
 20
 Finally, Banco stresses it is in an awkward position because of pending proceedings in Brazil. Banco has been advised by its Brazilian attorneys that if it honors the draft in contravention of the Brazilian injunction, it could lose its substantive rights to recover against All Service. But, Judge Haight properly concluded that Banco, having entered the New York letter of credit market on its own free will, was bound by the prevailing law of that forum. See Chuidian v. Philippine Nat'l Bank, 734 F.Supp. 415, 420 (C.D.Cal.1990).
 
 
 21
 Accordingly, since the acceptance unconditionally obligated the issuing bank to honor the draft drawn pursuant to a letter of credit even as against an alleged defrauding seller, we affirm the district court's denial of the motion for a preliminary injunction.
 
 
 
 [1]
 U.C.C. Sec. 5-114(2) states:
 [W]hen documents appear on their face to comply with the terms of a credit but a required document does not in fact conform to the warranties made on negotiation or ... there is fraud in the transaction
 (a) the issuer must honor the draft or demand for payment if honor is demanded by a negotiating bank or other holder of the draft ... in due course ... and
 (b) in all other cases as against its customer, an issuer acting in good faith may honor the draft or demand for payment despite notification from the customer of fraud, forgery or other defect not apparent on the face of the documents but a court of appropriate jurisdiction may enjoin such honor.
 
 
 [2]
 U.C.C. Sec. 4-303(1) provides:
 Any knowledge, notice or stop-order received by, legal process served upon or setoff exercised by a payor bank, whether or not effective under other rules of law to terminate, suspend or modify the bank's right or duty to pay an item or to charge its customer's account for the item, comes too late to so terminate, suspend or modify such right or duty if the ... legal process is received or served ... after the bank has done any of the following:
 (a) accepted or certified the item....