**MOTOROLA CREDIT CORPORATION
and Nokia Corporation, Plaintiffs,**

v.

**Kemal UZAN, et al., Defendants.**

No. 02 Civ. 0666 (JSR).

United States District Court,
S.D. New York.

Sept. 27, 2010.

Gordon M. Clay, John F. O'Connor, Steven K. Davidson, Steptoe & Johnson, L.L.P., Washington, DC, Mishell B. Kneeland, Munsch Hardt Kopf & Harr, P.C., Austin, TX, for Plaintiff Motorola.

Michael N. Donofrio, Neal N. Beaton, Holland & Knight, L.L.P., New York, NY, for Plaintiff Nokia.

Jason Brown, Ropes & Gray, LLP, New York, NY, Howard H. Stahl, Steptoe & Johnson, L.L.P., Washington, DC, for Plaintiffs Motorola and Nokia.

Kenneth M. Bialo, Emmet, Marvin & Martin, LLP, Mark Benjamin Holton, Robert F. Serio, Thomas C. Sheehan, Gibson, Dunn & Crutcher LLP, Dan J. Schulman, Salans, New York, NY, Ryan E. Bull, Benjamin E. Kringer, R. Stan Mortenson, Baker Botts LLP, Washington, D.C., for Defendants.

## OPINION, ORDER, AND JUDGMENT

JED S. RAKOFF, District Judge.

On September 21, 2009, plaintiffs Motorola Credit Corporation ("Motorola") and Nokia Corporation ("Nokia") moved for an order to enforce the judgments in this action against a nonparty, Libananco Holdings Co. Limited ("Libananco"), a Cypriot company that plaintiffs assert is an alter ego of the individual judgment defendants, namely, Kemal Uzan, Murat Hakan Uzan, Cem Cengiz Uzan, Melahat Uzan, Aysegul Akay, and Antonio Luna Betancourt (collectively, the "Uzans"). Plaintiffs also seek a turnover order pursuant to N.Y. CPLR § 5225.

At or about the time plaintiffs filed their motion, plaintiffs provided notice of their motion to, and served all supporting papers on, defendants' counsel of record, Baker Botts LLP ("Baker Botts"), as well as on the firm of Brown Rudnick LLP ("Brown Rudnick"), which represented the Uzans before the Second Circuit Court of Appeals during the most recent appeal in this matter, as well as in certain New York state actions prosecuted by Cem Uzan. Plaintiffs also provided notice to Crowell & Moring LLP ("Crowell & Moring"), Libananco's counsel in a then-ongoing proceeding before the International Centre for the Settlement of Investment Disputes ("ICSID"). Plaintiffs informed defendants' and Libananco's counsel that an initial hearing before this Court was scheduled for September 30, 2009. Crowell & Moring informed the Court by letter dated September 24, 2009, that it was not authorized to represent Libananco in this matter. *See* Letter from Clifton S. Elgarten, Esq., and George D. Ruttinger, Esq., dated Sept. 24, 2009. Similarly, on Sep-

tember 28, 2009, Brown Rudnick informed the Court by letter that Brown Rudnick had no authorization to appear on behalf of defendants. *See* Letter from May Orenstein, Esq., dated Sept. 28, 2009.

No representative from Crowell & Moring or Brown Rudnick appeared at the September 30, 2009 hearing, nor did the defendants appear. At the hearing, Baker Botts appeared but represented that earlier that day they had received communication from the individual defendants that Baker Botts was not authorized to represent them in this matter, although, as noted, Baker Botts had previously appeared. *See* Second Supplemental Declaration of Ryan E. Bull in Support of Baker Botts Motion to Withdraw as Counsel of Record for Individual Defendants, dated Sept. 30, 2009, Exs. A–F.

On October 6, 2009, the Court entered an Order to Show Cause, which was served on Baker Botts for the Uzans and other defendants and on Crowell & Moring as a firm able to apprise Libananco, requiring defendants to show cause why an order should not be entered finding that Libananco is an alter ego of the defendants and therefore liable to plaintiffs for the judgment rendered in this matter against the defendants. *See* Docket Entry # 714. The Order to Show Cause set a briefing schedule in which any opposition papers were to be filed on October 23, 2009 and reply briefs, if any, on November 6, 2009. Oral argument was scheduled for November 19, 2009 at 4:00 P.M. (later adjourned by the Court to November 20 at 4:00 P.M.). Baker Botts and Crowell & Moring filed non-substantive responses on October 23, and plaintiffs submitted a reply on November 6. At the November 20 hearing, no counsel purporting to be authorized to represent the Uzans or Libananco appeared, whereupon the hearing was rescheduled for July 22, 2010, so that, *inter alia*, the Uzans could substitute counsel

for Baker Botts if they so chose. Upon application to the Court, plaintiffs submitted a supplemental memorandum in support of their Order to Show Cause.

On July 22, 2010, Baker Botts and Crowell & Moring appeared solely on behalf of their firms and asserted that they did not appear on behalf of any defendant. However, at the hearing Baker Botts confirmed that counsel had emailed notice of the hearing to the Uzans, and, subsequently, on July 27, 2010, Crowell & Moring informed the Court by letter (in response to the Court's inquiry at oral argument) that Libananco "was apprised that our firm had received the Order to Show Cause that the Court issued in October 2009, and that prior to the hearing conducted on July 22, Libananco was apprised that plaintiff's motion would proceed." *See* Letter from Clifton S. Elgarten, Esq., and Gary A. Stahl, Esq., dated July 27, 2010.

In *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 62 (2d Cir.2004) (*"Uzan VII"*), the Second Circuit established the procedure by which plaintiffs could enforce the judgments against the defendants in this case. Specifically, the Second Circuit indicated that the Court would be required "(1) to give notice to any entities against whom plaintiffs judgment might be enforceable, and (2) to the extent the District Court believes that enforcement of the judgment against any nonparties is appropriate, to make findings sufficient to support piercing the corporate veils of those entities under applicable state law." *Id.* at 62.

The aforementioned procedural history makes clear that, in the face of the efforts by the Uzans and Libananco to avoid service, adequate notice of the Order to Show Cause was given to the Uzans and Libananco under the unusual circumstances of this case.

The issue before the Court, then, is whether plaintiffs have provided a suffi-

cient basis to support piercing the corporate veil and permitting enforcement of the judgment in this case against Libananco as an alter ego of the Uzans. This Court has previously found that the Uzans shift funds between various corporations under their direction and control to avoid creditors. *See Motorola Credit Corp. v. Uzan*, 274 F.Supp.2d 481, 526–31, 583 (S.D.N.Y.2003) (*"Uzan III"*). Libananco appears to be one more twist in the labyrinth. Certain records, dated July 9, 2010, recently provided by the Government of Southern Cyprus, Ministry of Commerce, Industry and Tourism, Department of Registrar of Companies and Official Receiver, demonstrate that Cem Uzan is the 100% owner of Libananco. *See* Supplemental Declaration of Steven K. Davidson, Esq., dated July 15, 2010 ("Davidson Supp. Decl."), Ex. A at 3; Ex. B at 3. Specifically, according to Libananco's certificate of shareholders, Cem Uzan directly owns 1,000 shares of Libananco, while Lentorsia Trading Limited, a Cypriot entity incorporated on October 21, 2009, owns the remaining 14,620 shares of the company, *id.*, Ex. A at 3; Ex. B at 1; but Cem Uzan is, in turn, the 100% shareholder of Lentorsia Trading Limited, according to that entity's certificate of shareholders. *Id.*, Ex. B at 3. These and other corporate records also confirm that Ali Cenk Turkkan ("Turkkan"), a long-time Uzan confederate who was once the sole shareholder of Libananco remains one of three directors of Libananco. *Id.*, Ex. A at 4; Declaration of

Steven K. Davidson, Esq., dated Sept. 21, 2009 ("Davidson Decl."), 114.

Thus, the corporate records by themselves indicate that Libananco is owned and controlled by the Uzans. Libananco's actions in the ICSID proceeding support this conclusion. In February 2006, Libananco initiated an arbitration proceeding in Washington, D.C., through Washington, D.C. counsel, against the Turkish government before the ICSID, seeking $10 billion for alleged breaches of the 1994 Energy Charter Treaty. Libananco's claim is founded on the Turkish government's seizure of the electricity concessions, Cukurova Elektrik AS ("CEAS") and Kepez Elektrik ("Kepez"). CEAS and Kepez are owned by the Uzans, *see Uzan III*, 274 F.Supp.2d at 526–27, and Libananco claimed injury as a substantial shareholder and investor in CEAS and Kepez. *See* Davidson Decl., Ex. 15 (Libananco Request for Arbitration ("RFA")). Libananco's Request for Arbitration admitted that CEAS and Kepez were owned and controlled by the Uzans, and alleged that Rumeli Elektrik Yatrim A.S. ("Rumeli Elektrik"), an Uzan-owned and—controlled entity, purchased an interest in CEAS and Kepez in 1993. *See* Davidson Decl., Ex. 15 at 10–11 (Libananco RFA).[1]

▇▇▇▇ In *Uzan VII*, the Second Circuit instructed the Court to "make findings sufficient to support piercing the corporate veils of those entities under applicable state law". *Uzan VII*, 388 F.3d at 62.

---

1. The Turkish press also reported that Cem Uzan made similar statements that he is the true owner of Libananco. *See* Davidson Decl., Ex. 17 (*Arbitration Weapon Backfires*, Star, Dec. 18, 2007, at 7) ("In a written petition submitted to the Ministry of Energy and Natural Resources two months ago, Young Party Leader Cem Uzan had stated that both CEAS and Kepez belonged to the Uzan Group and demanded their return."); Ex. 18 (*I Founded Libananco*, Star, Feb. 17,

2008) ("It has emerged that the owner of Libananco, a South Cyprus-based company that filed a $10.1 billion arbitration claim against Turkey, is none other than Cem Uzan, who declared to the court, 'I am the owner of the company'. . . . Uzan explained his purpose in setting up the company [as] follows: 'I felt that the shares in my companies were in jeopardy in Turkey. For that reason, in order to ensure that they would be safe, I founded Libananco and had the shares in question transferred to the new company.' ").

Here, the applicable state law is New York law, since New York is the forum state. *See, e.g., Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d 131, 137 (2d Cir.1991). In New York, piercing the corporate veil generally requires a showing that: "(1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury." *Morris v. State Dep't of Taxation & Fin.*, 82 N.Y.2d 135, 141, 603 N.Y.S.2d 807, 623 N.E.2d 1157 (N.Y.1993). "While complete domination of the corporation is the key to piercing the corporate veil, especially when the owners use the corporation as a mere device to further their personal rather than the corporate business, such domination, standing alone, is not enough; some showing of a wrongful or unjust act toward plaintiff is required." *Id.* at 141–42, 603 N.Y.S.2d 807, 623 N.E.2d 1157. Thus, "[t]he party seeking to pierce the corporate veil must further establish that the controlling corporation abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice against that party such that a court in equity will intervene." *Love v. Rebecca Dev., Inc.*, 56 A.D.3d 733, 868 N.Y.S.2d 125, 126 (2d Dep't 2008).

■ Here, both prongs for veil-piercing under New York law are met. To determine complete control over a corporation, courts consider a variety of factors such as, *e.g.*, the overlap of owners, directors, officers, and personnel. *See Superior Transcribing Serv., LLC v. Paul*, 72 A.D.3d 675, 898 N.Y.S.2d 234, 236 (2d Dep't 2010); *see also Eckhaus v. Blauner*, No. 94 Civ. 5635(CSH), 1997 WL 362166, at *6–7, 1997 U.S. Dist. LEXIS 9043, at *17–18 (S.D.N.Y. June 22, 1997). Here, Cem Uzan owns 100% of Libananco, directly or indirectly, and the former sole shareholder and still director is his long-time lieutenant, Turkkan. Moreover, when it suited their purpose (to make a claim in another proceeding), the Uzans freely admitted to their ownership and control of Libananco. Given the proven ways in which the Uzans and their associates have operated collectively, *see Uzan III*, 274 F.Supp.2d at 526–31, 583, the Court concludes that all of the individual defendants have exercised complete control and dominion over Libananco.

Turning to the second prong, the Uzans are clearly using Libananco to avoid the judgment obligations to plaintiffs. Cem Uzan has made repeated public declarations that he formed Libananco because "I felt the shares in my companies were in jeopardy in Turkey. For that reason, in order to ensure that they would be safe, I founded Libananco and had the shares in question transferred to the new company." *See* Davidson Decl., Ex. 18 (*I Founded Libananco*, Star, Feb. 17, 2008). Further still, the Uzans' attempt to disclaim their representation here by Baker Botts, now that it no longer suits their purposes, gives rise to the inference that they have no substantive defense to plaintiffs' claim that Libananco is an alter-ego. Similarly, the studied attempts of the Uzans and Libananco to avoid appearing in this action, even through reputable counsel who have represented them in other U.S. proceedings, can best be explained as attempt to avoid providing plaintiffs with the discovery that could even more clearly establish alter ego status.

Accordingly, the Court finds that Libananco is an alter ego of the individual defendants and is liable to plaintiffs to the same extent as those defendants.

■ Turning now to the requested relief in the form of a turnover order, "[t]he procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the

procedure of the state where the court is located...." Fed. R. Civ. P. 69(a)(1). "[W]here it is shown that the judgment debtor is in possession or custody of money or other personal property in which he has an interest, the court shall order that the judgment debtor pay the money, or so much of it as is sufficient to satisfy the judgment, to the judgment creditor...." N.Y. CPLR § 5225(a). Turnover orders directed against judgment debtors are effective against assets regardless of their location. *See In re Feit & Drexler, Inc.*, 760 F.2d 406, 414 (2d Cir.1985) (holding that where the court had jurisdiction over the judgment debtor, it could order her to transfer property located outside New York into the court's jurisdiction).

■ Therefore, as part of the relief against Libananco, the Court grants plaintiffs' application for an order directing Libananco to pay and/or turn over to plaintiffs any and all personal property and assets in which it has an interest, real or inchoate, tangible or intangible, sufficient to satisfy plaintiffs' judgments against the individual defendants here named, wherever such property and assets may be located, including, but not limited to, Libananco's potential recovery in a pending arbitration against the Government of Turkey and the proceeds of any award in favor of Libananco. This is more than warranted because under New York law, a judgment debtor's claim against a third party, even if intangible and unliquidated, may be levied upon to enforce a judgment. *See* N.Y. CPLR § 5225(b) (authority for issuance of turnover order against judgment debtor); N.Y. CPLR § 5201(b) ("A money judgment may be enforced against any property which could be assigned or transferred, whether it consists of a present or future right or interest and whether or not it is vested, unless it is exempt from application to the satisfaction of the judgment."); *see also ABKCO Indus. v. Apple Films, Inc.*, 39 N.Y.2d 670, 385 N.Y.S.2d 511, 350 N.E.2d 899, 901–02 (1976) (contingent, future, intangible interests that are assignable constitute property subject to attachment).

■ Here, Libananco's right to collect on an arbitration award that may be issued in its favor as a result of the ICSID proceeding is precisely the type of property interest that the New York Court of Appeals identified in *ABKCO* as being subject to a turnover order. In *ABKCO,* the New York Court of Appeals rejected the argument that the judgment-debtors contract right to future net profits from the future promotion of a Beatles film was too contingent to constitute "property" under CPLR § 5201(b) because there might not be any profit. *Id.* at 902. Instead, the New York Court of Appeals, discussing *ABKCO* in a subsequent case, noted that "[d]ispositive instead is whether such an interest has potential economic value to the creditor." *Supreme Merch. Co. v. Chemical Bank,* 70 N.Y.2d 344, 520 N.Y.S.2d 734, 514 N.E.2d 1358, 1360 (1987). Since the right to receive profits from the film "was deemed worthy of pursuit by the creditor, [it] was assignable, and hence was attachable." *Id.* Libananco's claim to recover $10 billion from the Turkish government is of significant economic value to plaintiffs, who are entitled only to an amount to satisfy their judgment in this case. *See* N.Y. CPLR § 5225(a).

Having found that Libananco is an alter ego of the individual defendants and is liable to plaintiffs to the same extent as those defendants, the Court hereby grants judgment against Libananco and in favor of plaintiffs, to the same extent as previously entered in this action against the individual defendants and in favor of plaintiffs, including interest accrued to the date of entry. Libananco is ordered to pay and/or turn over to plaintiffs any and all

personal property and assets in which it has an interest, real or inchoate, tangible or intangible, sufficient to satisfy plaintiffs' judgments against the individual defendants herein, wherever such property and assets may be located. This includes, but is not limited to, Libananco's potential recovery in a pending arbitration against the Government of Turkey, including the proceeds of any award in favor of Libananco. The foregoing turnover order shall be effective and enforceable against all those who receive notice of it and those who are the Uzans' or Libananco's officers, agents, servants, employees, and/or attorneys, and all other persons who are in active concert or participation with them.

Given the Uzans' prior efforts at avoiding any satisfaction of the judgments against them by transferring funds from one company to another, the Court further orders, pursuant to Rule 69, Fed. R. Civ. P., and N.Y. CPLR § 5222—effective upon the service or, alternatively, upon the giving of reasonable notice of this Order and of any additional notice(s) required to be provided pursuant to N.Y. CPLR § 5222—that (1) Libananco is hereby forbidden to make or suffer any sale, assignment, transfer or interference with any property (including any rights, causes of action, or anticipated future benefits arising from or relating to its claims against the Government of Turkey) in which it has an interest, real or inchoate, except upon direction of the Court, until plaintiffs' judgments are satisfied in full or vacated; and (2) any other person or entity who owes a debt to Libananco or is in possession or custody of property in which he or she knows Libananco has an interest, or a particular debt or property if specified by counsel for plaintiffs in a notice provided, is forbidden to make or suffer any sale, assignment or transfer of, or any interference with, any such property, or pay over or otherwise dispose of any such debt, to any person other than the plaintiffs, except pursuant to an order of this Court, until the aforesaid judgment now entered is satisfied.

The Clerk of the Court is directed to close document number 702 on the docket of the case.

SO ORDERED.